UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DARRIN DUHAMEL, | Case No. 2:17-CV-002858-GMN-EJY |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Darrin Duhamel's Amended Motion for Summary Judgement ("Plaintiff's Motion"). ECF No. 52. The Court has considered Plaintiff's Motion, the Defendant Nancy A. Berryhill's (Acting Commissioner of Social Security) Cross-Motion to Remand for Further Proceedings (ECF No. 57), Plaintiff's Response to Defendant's Cross-Motion to Remand for Further Proceedings (ECF No. 65), and Defendant's Reply to Cross-Motion to Remand for Further Proceedings (ECF No. 66). After considering each of these filings and the Administrative Record ("AR") submitted therewith, the Court finds remand of Plaintiff's case under the Compassionate Allowance program and time specific requirements is appropriate.

**PROCEDURAL BACKGROUND**

Plaintiff filed his application for disability insurance benefits in August 2013. AR 53. His claim was initially denied on March 4, 2014, and upon reconsideration on December 30, 2014. *Id*. Plaintiff filed a request for a hearing, which took place August 1, 2016. *Id*. The Administrative Law Judge ("ALJ") concluded Plaintiff had not engaged in substantial gainful activity since August 1, 2013, and that Plaintiff has severe medical impairments of obesity, peripheral neuropathy, loss of visual efficiency, and orthostatic hypotension. AR 55. However, the ALJ also found Plaintiff did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (AR 57), Plaintiff had a residual functional capacity ("RFC") to perform light work, although with numerous limitations (AR 57), and thereafter concluded Plaintiff was not disabled because he could perform his past relevant work of retail manager. AR 63. Plaintiff then requested an Appeals Council review

1   of the ALJ's findings and submitted new documents.  AR 19.  The Appeals Council denied Plaintiff's

2   request for review rendering the ALJ's decision final for judicial review purposes.  AR 7-11.

3                                    **FACTUAL BACKGROUND**

4           This case started more than six years ago on August 15, 2013, when Plaintiff filed an

5   application for disability insurance benefits under Title II of the Social Security Act.  AR 198-99,

6   214.  The Social Security Administration obtained many (but not all) of Plaintiff's medical records

7   and sent Plaintiff for a consultive examination on January 17, 2014.[1]  AR 315-318.  The examiner,

8   Dr. R. Kirby Reed, reviewed various medical records, examined Plaintiff, and stated, among other

9   things, that Plaintiff had "been diagnosed as having peripheral neuropathy.  EMG/NCS results were

10  not provided, however these studies could still be normal with small fiber neuropathy."  AR 317.

11          Before and after Plaintiff's consultive examination, he was also treated by Dr. M. Paul Singh,

12  his primary care physician.  AR 310 and 337.  Dr. Kenneth Martinez and Dr. Singh diagnosed

13  Plaintiff with a variety of ailments including polyneuropathy, autonomic neuropathy, orthostatic

14  hypotension, restless leg syndrome, and chronic constipation.  AR  310, 404, 415, 497-518.  During

15  treatment by these physicians, Plaintiff also saw an ophthalmologist, psychiatrist, gastroenterologist,

16  and an electrophysiologist for various different ailments that developed over time including, but not

17  limited to, orthostatic intolerance, autonomic neuropathy, syncope, and depression.  AR 310-32,

18  348-353, 355-400, 418, 443-448.

19          Upon commencing treatment with Dr. Edgar Evangelista in 2015, Plaintiff was diagnosed

20  with orthostatic hypotension, unspecified idiopathic peripheral neuropathy, and restless leg

21  syndrome.  AR 529.  In October 2015, Plaintiff was seen at HealthCare Partners reporting severe

22  pain that kept him from sleeping for the prior three months.  AR 473.  Plaintiff also reported such

23

24

25

26  [1]      Prior to seeing the consultive examiner, Plaintiff had been treating with Dr. Kenneth Martinez, a neurologist in
    California, beginning in approximately 2004.  AR 27.  Dr. Martinez employed a physician's assistant named Wendy
27  Reulman who often saw Plaintiff at Dr. Martinez's office.  AR 301.  In August 2012, Plaintiff moved from California to
    Henderson, Nevada to lower his cost of living.  However, Plaintiff continued to see Dr. Martinez for his health care until
28  June 11, 2015, when Plaintiff first sought treatment with Dr. Edgar Evangelista who is located in Las Vegas, NV.  AR
    528-29.

1  severe pain that he could not "keep his feet on the floor," couldn't wear shoes or socks, and was so

2  depressed he had contemplated suicide.  AR 474.  Plaintiff was referred to a psychiatrist who

3  prescribed another medication, but Plaintiff declined psychotherapy.  AR 443-446.

4      In May 2016, Plaintiff saw Dr. Evangelista again.  AR 553-555.  Among other things stated

5  in these notes is the following: "Nerve conduction studies were normal which makes likelihood of a

6  small or C fiber peripheral neuropathy more likely given patient's degree of pain and paresthesias

7  and nehgative [sic] nerve conduction. … At this point, the possibility that patient may have a small

8  fiber of C fiber neuropathy given his pain and symptoms is *very likely*…"  AR 553.  On June 17,

9  2016, Dr. Evangelista wrote a letter stating: "Patient was previously diagnosed with peripheral

10 neuropathy but after further evaluation of patient's new symptoms, there is a good possibility it may

11 be Small Fiber Sensory Neuropathy (SFSN).  Patient needs to be referred to a facility where further

12 testing can be done to confirm this diagnosis so he can be treated appropriately."  AR 591.

13     Dr. Evangelista referred Plaintiff to Stanford Autonomic Disorders Program (ECF No. 52 at

14 12:21-24) where he was seen by Dr. Dong In Sinn in the Neurology and Neurosciences Autonomic

15 Division.  AR 43-48.  This evaluation took place on September 8, 2016,  AR 43.  The "Impression

16 /Plan" written by Dr. Sinn states, in pertinent part: "Neurological examination shows orthostatic

17 hypotension and small-fiber sensory findings. . . . Clinically, it is reasonable to make a diagnosis of

18 peripheral autonomic sensory neuropathy and small-fiber neuropathy and treat him under such

19 diagnosis."  AR 47.  This report was not provided to the ALJ, but to the Appeals Council after the

20 ALJ had made his decision that Plaintiff is "not disabled under sections 216(i) and 223(d) of the

21 Social Security Act."  AR 8, 19, 64, 67-69.

22     In addition to the ALJ not having Dr. Sinn's report that diagnosed Plaintiff with, among other

23 things, small fiber neuropathy, Plaintiff provided the Appeals Council with a folder of "New

24 Exhibits" that included a December 2, 2016 letter from Dr. Martinez who explained the care and

25 diagnoses he provided during treatment and made the statement that Plaintiff "has been unable to

26 work since 2012."  AR 27.  Dr. Martinez further stated, "Given the degenerative and permanent

27 nature of his polyneuropathy and associated autonomic nervous system dysfunction, in my opinion

28 he poses a safety risk to any vocation due to fall and fainting hazard.  I recommend permanent

disability status." *Id.* Notably, Dr. Martinez had previously submitted a May 2015 questionnaire in which he stated that Plaintiff was physically disabled from working and that his condition was so severe that he could not concentrate sufficiently to perform even simple tasks. AR 3. Dr. Dharij Narula,[2] who first saw Plaintiff in May 2014 (AR 355), opined in June 2015 that Plaintiff's conditions and treatment "prevent him from working" and that he "is completely totally disabled." AR 419 and 422. Dr. Lana Dawood, who first saw Plaintiff in November 2014 (AR 461-463), opined in November 2015 that Plaintiff was in constant pain and "incapable of even 'low stress' job" because "he can't put his feet down or work or put shoes or socks on." AR 429.

Despite the consistency of opinions among Plaintiff's treating physicians, Drs. Martinez, Narula, and Dawood, the ALJ rejected all three opinions because they relied on Plaintiff's reports of symptoms and limitations, and there were no "progress notes or a longitudinal record" supporting their opinions. AR 62. In contrast, the ALJ assigned "significant weight to the [opinions of] state agency medical consultants" Dr. Larry Pappas and Dr. Navdeep Dhaliwal, neither of whom examined or met Plaintiff. AR 61. Dr. Dhaliwal (a non-examining physician), who opined in March 2014, largely rejected Dr. R. Kirby Reed's finding (despite his examination of Plaintiff) stating that his opinion was "not supported by exam findings." AR 119. Dr. Pappas (also a non-examining physician) largely confirmed Dr. Dhaliwal's findings in December 2014. AR 136. These consultive physicians concluded that Plaintiff was able to do some work, with Dr. Dhaliwal's findings more restrictive than Dr. Pappas' findings. AR 61.

The ALJ "considered, but gave little probative weight to . . . [Plaintiff's] testimony" because he believed the testimony relating to "subjective allegations" was inconsistent with the "medical evidence and other evidence in the record." AR 63. The ALJ also gave "limited weight" to Dr. Reed's opinion because he believed "there was little to no objective evidence . . . or medical evidence that would support a finding that the claimant had such extreme limitations in standing and/or walking." AR 60. The ALJ made this statement despite the medical reports of Drs. Martinez, Narula, and Dawood concurring that Plaintiff suffered from such severe pain or symptoms that he

---

[2]    Dr. Narula's name is misspelled throughout the ALJ report as Navula.

4

was unable to work.  AR 61 and 62.  In fact, the ALJ stated he could not "credit" the opinions of these doctors (all treating physicians who saw Plaintiff more than once) at all.  AR 62.

Following these statements, the ALJ denied Plaintiff's application for benefits because he "is not disabled under sections 216(i) and 223(d) of the Social Security Act."  AR 64.

### DEFENDANT'S REQUEST FOR REMAND

In her Cross-Motion to Remand for Further Proceedings (ECF No. 57), Defendant admits that the ALJ erred when he gave "little weight to Plaintiff's testimony" because Plaintiff's "activities of daily living in conjunction with the medical evidence demonstrating minimal abnormalities, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to a medically determinable impairments."  ECF No. 57 at 13:16-20; AR 63.  As explained by Defendant, "[a]lthough the ALJ must consider the objective medical evidence, this cannot be the sole basis for rejecting claimant's testimony.  20 C.F.R. § 404.1529(c)(2)."  ECF No. 57 at 13:24-25.  Defendant further states:

> In the hearing decision at issue here, the ALJ did not identify which of Plaintiff's activities of daily living were inconsistent with his statements about symptoms. This left the objective medical evidence as the ALJ's sole basis for rejecting Plaintiff's testimony.  Thus, we are requesting voluntary remand so that the ALJ may reevaluate whether Plaintiff's statements about his symptoms were inconsistent with this or any of the other evidence factors outlined in 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

ECF No. 57 at 14:2-7.  Defendant also recognizes that the ALJ did not have all the relevant information before him regarding Plaintiff's diagnoses, including Dr. Sinn's diagnosis of small fiber neuropathy, "which may change the ALJ's analysis of Plaintiff's alleged symptoms."  *Id.* at 15-16 citing AR 47.  Defendant carefully points out that Dr. Reed, a state consultive examiner, who examined Plaintiff, but whose opinion the ALJ discounted, had previously opined that "EMG/NCS results were not provided, however these studies could still be normal with small fiber neuropathy."  AR 317; ECF No. 57 at 14:24-26.

Further, although not mentioned by Defendant, Dr. Evangelista, who wrote a letter in June 2016 stating there is a "good possibility" that Plaintiff's diagnosis was small fiber neuropathy (AR 591), was mentioned only briefly by the ALJ.  AR 63.  There is no discussion by the ALJ of the

weight given to Dr. Evangelista's treatment of Plaintiff in the ALJ's decision. *Id*. Defendant is nonetheless correct that before Dr. Sinn specifically diagnosed Plaintiff with small fiber neuropathy, no such diagnosis had been made. AR 47.

Ultimately, Defendant states that there is "conflicting evidence regarding the frequency and severity of Plaintiff's alleged symptoms…that are relevant to the ALJ's findings regarding Plaintiff's testimony." ECF No. 57 at 16:1-3. For this reason, together with Dr. Sinn's medical diagnosis presented after the ALJ reached his decision, Defendant states that on remand the ALJ will consider this new "diagnosis of small fiber neuropathy and any updated medical records that may shed light on whether and to what extent Plaintiff's alleged symptoms are consistent with the objective evidence. 20 C.F.R. [§] 404.1529(c)(2)." *Id.* at 16:17-19.

### PLAINTIFF'S REQUEST FOR A FINDING OF DISABILITY OR REMAND UNDER SENTENCE 6 OF SECTION 205(G) OF THE SOCIAL SECURITY ACT

Plaintiff asks that his case be remanded to the Social Security Administration for immediate payment of benefits and not for further proceedings. ECF No. 65 at 17:19-20. Plaintiff argues the record is sufficient as it stands and no additional evidence is needed to conclude that he suffers from an impairment capable of producing all his symptoms. *Id*. at 17:20-22. Plaintiff then admits, however, that if the matter is remanded for further proceedings the records will "include more recent information from each of his treating physicians." *Id*. at 17:27-28. Plaintiff notes that July 14, 2016 documents faxed to the agency on July 19, 2016 from HealthCare Partner Medical Group lists among the "Problem/Description . . . idiopathic small fiber sensory neuropathy." AR 462. However, it is not clear that this is a diagnosis. *Id*. Importantly, Plaintiff goes on to state that "[t]he only other relevant medical evidence was the diagnosis of multiple system atrophy (MSA) . . . which was not presented until early 2018 . . . ." ECF No. 65 at 19:9-14. It is worth noting that Defendant admits that MSA is one of the conditions included in the Compassionate Allowance program, which is designed to reduce wait time for those seeking a disability finding. ECF No. 66 at 6-10 and 18.

Plaintiff states that if the Court is unwilling to remand for immediate benefits, the Court should remand his case to the Compassionate Allowances program. ECF No. 65 at 22:8-9. Plaintiff asks that he not be required to file a new civil action if he fails to receive a "fully favorable" decision

1  from the ALJ. *Id*. at 21:16-19. Plaintiff asks that either he or the Office of General Counsel advise

2  the Court when the remanded proceedings have concluded and, if necessary, be allowed to file a

3  motion to reopen the docket. *Id*. at 21:20-12. Plaintiff admits his diagnosis of MSA is new and was

4  not available to the ALJ at the time of his final decision, and that had this information, together with

5  the diagnosis of small fiber neuropathy been available, the outcome of the case would likely have

6  been different. *Id*. at 21:25 – 22:1.

7  **FIVE-STEP EVALUATION PROCESS**

8       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

9  the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful

10 activity by reason of any medically determinable physical or mental impairment which can be

11 expected to result in death or which has lasted or can be expected to last for a continuous period of

12 not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

13 impairment must be "of such severity that he is not only unable to do [his or her] previous work[,]

14 but cannot, considering [his or her] age, education, and work experience, engage in any other kind

15 of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),

16 1382c(a)(3)(B).

17      There is a well established five-step sequential analysis used to determine if a claimant

18 satisfies the above criteria. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Step one

19 requires the Commissioner of Social Security to consider the claimant's work activity. 20 C.F.R. §§

20 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

21 Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

22      If the claimant is not engaged in substantial gainful activity (which is the case here (AR 55)),

23 the analysis proceeds to step two. This step requires consideration of the severity of the claimant's

24 impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any

25 impairment or combination of impairments which significantly limits [his or her] physical or mental

26 ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

27

28

7

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, the Commissioner must find that the claimant is not disabled.    20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ concluded in this case that Plaintiff suffered from severe impairments.  AR 55.

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.  The ALJ did this analysis at AR 56-63, although the analysis is far from the model of clarity.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can perform past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing past relevant work, the analysis proceeds to step five.  Here, the ALJ found Plaintiff could perform his past relevant work as a retail manager.  AR 64.

Step five requires consideration of whether, in view of the claimant's RFC, he/she is capable of performing other work in the national economy.    20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.    20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable

1    of adjusting to other work, analysis concludes with a finding that the claimant is disabled and entitled

2    to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  This analysis was not done by the ALJ

3    because of his findings at step 4.

4        The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

5    180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

6    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

7    work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2),

8    416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9            **EVALUATION OF A CLAIMANT'S SUBJECTIVE SYMPTOM TESTIMONY**

10        An ALJ must engage in a two-step analysis when determining whether to discount a

11    claimant's testimony regarding subjective symptoms.[3]  First, an ALJ must determine "whether the

12    claimant has presented objective medical evidence of an underlying impairment 'which could

13    reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504

14    F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en

15    banc)).  The claimant is "not required to show that his impairment could reasonably be expected to

16    cause the severity of the symptom he has alleged; rather, he/she need only show that it could

17    reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

18    Cir. 2009).  Second, if "there is no evidence of malingering, 'the ALJ may reject the claimant's

19    testimony concerning the severity of his symptoms only by offering clear and convincing reasons

20    for doing so.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Smolen v. Chater*,

21    80 F.3d 1273, 1282 (9th Cir. 1996)).  The Ninth Circuit makes clear that "this is not an easy

22    requirement to meet: '[t]he clear and convincing [evidence] standard is the most demanding required

23    in Social Security cases.'"  *Id*. at 1015 (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920,

24    924 (9th Cir. 2002)).

25        For cases involving ALJ decisions issued on or after March 24, 2016, which this is, factors

26    to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's

---

[3]        SSR 96-7p was superseded by SSR 16-3p in March 2016.  SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016).

symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c).

A claimant's statements about his pain or other symptoms alone will not establish that he is disabled.  20 C.F.R. § 416.929(a); 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability").  "A claimant is not entitled to benefits under the Social Security Act unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v.* Comm'r *Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citation omitted).

An ALJ must "consider all of the evidence in an individual's record . . . to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.  An ALJ's finding on this matter must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony.  *Thomas v. Barnhart*, 278 F.3d 948, 958 (9th Cir. 2002) (citation omitted); *Sullivan*, 947 F.2d at 345-46.  In turn, the courts "review the administrative record as a whole, weighing the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

10

(quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

"The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).  Accordingly, a reviewing court is not required to credit as true a claimant's allegations or physician's opinion merely because the ALJ made a legal error in discrediting it.  *Id.* (citing *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1106 (9th Cir. 2014)).  Instead, a remand for an immediate award of benefits is appropriate only in "rare circumstances," and, before ordering that extreme remedy, the Court must satisfy itself that the following three requirements are met:  First, the Court must conclude that "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion."  *Garrison,* 759 F.3d at 1020.  Second, the Court must find that "the record has [not] been fully developed and further administrative proceedings would serve no useful purpose." *Id.*  "Third, we must conclude that "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Id.* at 1021.

However, even under this "credit-as-true rule" stated above, the Court will not remand for an award of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Id.*  In fact, as to the first element of the credit-as-true rule, administrative proceedings

are generally useful where the record "has [not] been fully developed," (*id.* at 1020), there is a need to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), or the "presentation of further evidence . . . may well prove enlightening" in light of the passage of time. *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002); *cf. Nguyen v. Chater*, 100 F.3d 1462, 1466–67 (9th Cir. 1996) (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same); *Dodrill v. Shalala*, 12 F.3d 915, 918, 919 (9th Cir. 1993) (same); *Bunnell*, 947 at 348 (9th Cir. 1991) (en banc) (same).

## DISCUSSION

There is no dispute that the ALJ made errors reaching his decision denying Plaintiff disability benefits. However, there is disagreement about whether those errors should lead to a remand for further proceedings or to a remand for an immediate award of benefits. There is no doubt, even from Plaintiff, that the ALJ did not have all the evidence before him at the time he made the decision; and, such evidence could easily have weighed on that decision and resulted in a different outcome. ECF No. 65 at 19:4-14. There is also no dispute that there is additional evidence, which is now available from Plaintiff's treating physicians, that further illuminate Plaintiff's condition and could impact the determination regarding whether Plaintiff's testimony regarding symptoms and limitations is consistent with objective medical evidence. *Id.*; ECF No. 66 at 13:18-24.

The Defendant does not concede that the ALJ erred when he stated "he could not credit" the opinions of Plaintiff's three treating physicians. AR 62. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Nguyen*, 100 F.3d at 1464. Here, the ALJ's rejection of the three treating physicians (Martinez, Navula, and Dawood) is first based on a boilerplate statement "that a treating physician's opinion on the ultimate issue of disability is not binding on the Commissioner or adjudicator." AR 62. This reason, provided by the ALJ, is not at all persuasive. The ALJ, however, goes on to state that these physicians credited Plaintiff's statements as to symptoms and limitations as true without criticism. AR 62. But a review of the

12

record shows that these physicians' opinions were not only consistent with one another, but also consistent with the findings of the consultive evaluation done by Dr. Reed, the only state consultive physician who saw Plaintiff. Specifically, it was Dr. Reed who first opined in January 2014 that, despite normal EMGH/NCS results, Plaintiff could still suffer from small fiber neuropathy (a diagnosis confirmed by Dr. Sinn in September 2018). AR 47, 317. Dr. Reed's 2014 opinion is supported further by Dr. Evangelista's May 2016 opinion, and June 2016 letter, both of which stated, in sum, that Plaintiff likely suffered from small or C fiber neuropathy. AR 553, 591. Thus, it appears that five medical doctors, who examined Plaintiff found his symptoms consistent with a medical explanation that was largely ignored by the ALJ.

Moreover, the ALJ says the treating physicians did not have clinical or laboratory abnormalities to back up their findings (AR 62) while at the same time he ignored that this fact is consistent with a diagnosis of small fiber neuropathy as explained by Drs. Reed and Evangelista, and as confirmed by Dr. Sinn's diagnosis. AR 47, 317, 591. The ALJ does not find evidence that Plaintiff malingered, but concludes the opinions in question "depart *substantially* from the rest of the record." AR 62 (emphasis added). Therefore, this conclusion by the ALJ is not supported by clear and convincing reasoning. The ALJ also concludes that EMG and NCS testing in May revealed no evidence to support "mononeuropathy, plexopathy, radiculopathy, peripheral neuropathy, or inflammatory myopathy," but ignores, in this conclusion, Dr. Reed's and Dr. Evangelista's explanation that negative studies could still be normal with small fiber neuropathy, which the ALJ never mentions in his report. AR 60, 62, 317, 591. Similarly, when the ALJ ignored Dr. Evangelista's June 2016 letter stating that "there is a good possibility it may be Small Fiber Sensory Neuropathy (SFSN) [and that] Patient needs to be referred to a facility where further testing can be done to confirm this diagnosis so he can be treated appropriately," the ALJ obviously provided no reasoning at all. AR 591.

Based on these numerous statements from doctors who examined Plaintiff and Dr. Evangelista's further statement that "Patient needs to be referred to a facility where further testing can be done to confirm this diagnosis so he can be treated appropriately," (*id.*) the ALJ failed to meet the clear and convincing standard for rejecting Plaintiff's symptom testimony. Moreover, the ALJ

13

also failed to take appropriate steps to fulfill his responsibility to further develop the medical record. *Chase v. Astrue,* 458 Fed.Appx. 553, 557 (7th Cir. 2012) ("[i]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making [residual functional capacity] and disability determinations"). The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983). The choice is within the discretion of the court, but remand is proper where additional administrative proceedings could remedy defects that arose in the original proceedings. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981).

The ALJ failed to satisfy his duty to conduct a full and fair inquiry by discrediting Plaintiff's testimony, discrediting the opinions of Plaintiff's treating physicians, ignoring Dr. Evangelista's recommendation for further specialized testing, and by substantially relying only on opinions of two state consultants who never saw Plaintiff. The ALJ had substantially conflicting opinions before him and should have taken further steps to obtain additional medical evidence in light of inconsistencies within the record. In sum, additional medical information regarding claimant's limitations will be of assistance to assuring a proper and thorough evaluation of Plaintiff's testimony, Plaintiff's conditions, and Plaintiff's disability determination. Accordingly, remand for further proceedings is warranted. *See Kail v. Heckler,* 722 F.2d 1496, 1497 (9th Cir.1984) (remand proper where additional administrative proceedings that would include "additional medical opinions regarding claimant's residual functional capacity" could remedy defects).

### REMAND STANDARD AND CONCLUSION

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler,* 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler,* 775 F.3d at 1099); *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citations omitted). However, in a number of

Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when the three conditions discussed above are met. *Garrison*, 759 F.3d at 1020 (citations omitted).

Here, under the three part test established in *Garrison*, the Court must first conclude that "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." 759 F.3d at 1020. There is no dispute that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and, as such, this element of the test is met. ECF No. 57 at 13:15-23. This alone warrants remand for further proceedings. *Id*. at 15:24 — 14:8. Second, the Court must find that "the record has [not] been fully developed and further administrative proceedings would serve no useful purpose." *Id*.

As stated above, "administrative proceedings are generally useful where the record has [not] been fully developed, . . . there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Hollie H. v. Comm'r of Soc. Sec.*, Case 2:17-cv-00421, 2019 WL 267932 *4 (E.D.Wash, January 18, 2019) (citations omitted). Here, a remand for further proceedings is warranted because the ALJ ignored conflicts and ambiguities in the record that new evidence, evidence not available to the ALJ at the time of the hearing, will prove enlightening and clarifying. Specifically, the ALJ did not have Dr. Sinn's evaluation and diagnosis that Plaintiff suffers from small fiber neuropathy and should be treated accordingly (ECF No. 66 at 3:13-17; AR 47), which was discussed by Drs. Reed and Evangelista in January 2014 and June 2016 respectively.

Further, the parties agree that the presentation of additional treating physician evidence, developed by virtue of the passage of time, will prove enlightening, including the potential diagnosis of MSA. ECF Nos. 65 at 19:9-14; 66 at 3:18-24. Thus, a remand for further proceedings is clearly called for in this case. Third, and finally, the Court must conclude that "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1021. Here, if Plaintiff's improperly discredited evidence, improper discredited opinions of Plaintiff's treating physicians as well as their additional treatment, and Dr.

Sinn's diagnosis are all credited as accurate, the ALJ would be required to find the claimant disabled on remand.  The Court concludes that three factors established in *Garrison* warrant a remand for further administrative proceedings.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Plaintiff's Amended Motion for Summary Judgment (ECF No. 52) be DENIED and that Defendant's Cross-Motion to Remand for Further Proceedings (ECF No 57) be GRANTED in part and DENIED in part.

**IT IS FURTHER RECOMMENDED** that this matter shall be remanded to the Commissioner of Social Security under the Compassionate Allowance program as this case has been pending for more than six years, and time is of the essence.

**IT IS FURTHER RECOMMENDED** that Plaintiff be permitted to submit additional evidence within **60 days** of the date of this Order, and, if needed, receive a new hearing within **150 days** of the date of this Order, unless Plaintiff is unable to proceed within that timeframe.

**IT IS FURTHER RECOMMENDED** that Plaintiff's testimony be reevaluated given the additional evidence available and to be provided to the ALJ for consideration in determining the credibility of Plaintiff's testimony.  The ALJ shall articulate, if appropriate to the ALJ's reevaluation, the specific basis why he continues to discredit Plaintiff's testimony.

**IT IS FURTHER RECOMMENDED** that the ALJ reevaluate the analysis of treating physicians' opinions and articulate, if appropriate to the ALJ's reevaluation, why he continues to reject the opinions of these treating physicians.

**IT IS FURTHER RECOMMENDED** that the ALJ reevaluate all remaining evidence in light of the new evidence presented to assess Plaintiff's symptoms and limitations.

**IT IS FURTHER RECOMMENDED** that the ALJ take any further action needed to complete the administrative record and to promptly issue a new decision.

**IT IS FURTHER RECOMMENDED** that the ALJ issue a new decision on Plaintiff's application for benefits within **180 days** of the date of this Order.

1
      **IT IS FURTHER RECOMMENDED** that Plaintiff be allowed to return to federal court

2
within **60 days** after the ALJ's opinion on remand if the ALJ does not issue a favorable decision.

3
Plaintiff need not wait for Appeals Council review.

4
**NOTICE**

5
      Pursuant to Local Rule IB 3–2, any objection to this Finding and Recommendation must be

6
in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has

7
held that the courts of appeal may determine that an appeal has been waived due to the failure to file

8
objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also

9
held that (1) failure to file objections within the specified time and (2) failure to properly address

10
and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal

11
factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir.

12
1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

13

14
      DATED:  September 16, 2019

15

16

17
                _____

18
      ELAYNA J. YOUCHAH
      UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

17